JOHN WHITMAN V. STATE

No. 29,420. January 15, 1958.

*McCarthy, Rose & Haynes*, Amarillo, for appellant.

*Lon Moser*, County Attorney, Amarillo, and *Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

This is a conviction under the motor carrier act, Art. 1690b V.A.P.C. and Art. 911b V.A.C.S.; the punishment, a fine of $125.

The complaint and information allege that appellant was a motor carrier, operating a truck as a contract carrier for transportation of property for compensation and hire over a certain public highway, traversing said highway without first having obtained from the Texas Railroad Commission "a certificate declaring that the Public Convenience and Necessity required such operation over said highway" between Amarillo and Canadian, both incorporated cities.

Art. 911b V.A.C.S. defines the term "certificate" as meaning "certificate of public convenience and necessity issued under this Act." (Sec. 1(e) Sec. 3 provides that no motor carrier shall operate *as a common carrier* without a certificate.

Nowhere in the information do we find an allegation that appellant operated as a common carrier.

On the contrary, the information alleged that appellant operated as a "contract carrier," which term is defined in Sec. 1(h) to mean any motor carrier as hereinabove defined, transporting property for compensation or hire over any highway in this State *other than as a common carrier*.

Sec. 3, which requires a certificate by a motor carrier operating as a common carrier, also provides that no motor carrier shall operate as a contract carrier without first having obtained from the Commission a *permit* so to do. Sec. 1(f) defines permit to mean "the permit issued to contract carriers under the terms of this Act."

We find also in Section 5 the requirement for a certificate by motor carriers operating as a common carriers.

In Sec. 5a (b), regulating motor carriers transporting certain property including cattle, motor carriers having contract carrier *permits* are excepted from obtaining *certificate* of convenience, whereas the portion of the statute dealing with permits to engage in the business of operating as a contract carrier is found in Sec. 6(a), wherein it is provided that such permit shall not be issued * * * unless the character of the business being done or to be done by the applicant strictly conforms to the definition of a contract carrier.

That the *permit* required of a contract carrier is a separate and different thing from a *certificate* of public convenience and necessity is further shown by Sec. 6-bb of the Act which provides that no permit to operate as a contract carrier shall be granted by the commission to any person operating as a common carrier and holding a certificate of convenience and necessity; nor shall any applicant for certificate of convenience and necessity be granted by the commission to any person operating as a contract carrier, nor shall any vehicle be operated by any motor carrier with both a permit and a certificate.

It is apparent that the information is fatally defective.

We further conclude that under the undisputed evidence appellant was shown to be neither a common carrier, motor carrier nor contract carrier, as defined in the Act, but a private motor vehicle owner, as defined in Sec. 1a, (1)b, and Sec. 1b of Art. 911b V.A.C.S. as amended in 1941.

Appellant was employed by one Jack Funderburg as a truck driver. Funderburg was a cattle man who owned two cattle trucks which he used in transporting his cattle. He was a dealer in cattle, operating among other places at the Amarillo Live Stock Auction Company.

Appellant was driving one of Jack Funderburg's cattle trucks loaded with cattle on the highway when apprehended, his destination being a ranch which he would reach after traveling from Amarillo, an incorporated city, and passing through Canadian, also an incorporated city.

The cattle which were being so transported by appellant were cattle which were sold by Jack Funderburg to one Fred Farnsworth on the day they were loaded and hauled, under the following circumstances.

Farnsworth came from his place near Canadian to the Amarillo Auction Company to buy cattle. Funderburg had cattle there which Farnsworth was shown, and negotiations were entered into which resulted in an agreement being reached that Farnsworth would buy 70 head of cattle from Funderburg at a price of 19 cents per pound. A part of the agreement was that Funderburg would deliver the cattle to Mr. Farnsworth's ranch for which Farnsworth would also pay Funderburg 39 cents per mile, the distance being 114 miles.

The record is clear that the hauling of the cattle and the sum to be paid for such hauling entered into the negotiations which resulted in the sale of the cattle.

Farnsworth offered 19 cents. Funderburg was asking 20 or 21 cents. Funderburg said "If we can make a trade, will you let us haul them?" Farnsworth, who had no truck, being told that the hauling charge would be "just the ordinary, customary price" agreed, saying that he expected to pay some one for hauling the cattle. Funderburg said "that will take up some of the slack;" that he was cutting down on his price. He said "If you will let me haul the cattle, that will take up some of the difference and we will trade with you."

Farnsworth gave a check to the Commission Company for $5,614.12, which included $5,525.20 for 29,080 pounds of cattle at 19 cents and also included the charge for the hauling.

The cattle were loaded on two trucks belonging to Jack Funderburg, one of which, driven by appellant, was stopped by an inspector for the Texas Railroad Commission. However, appellant was permitted to proceed and both trucks reached their destination and the cattle were delivered to the Farnsworth ranch as agreed.

The applicable portions of Art. 911b V.A.C.S. read as follows:

Section 1. "(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns.

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation

or hire over any highway in this State other than as a common carrier. As amended Acts 1931, 42nd Leg., p. 480, ch. 277, Sec. 1."

\* \* \* \* \*

"Sec. 1a (1) Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier' as defined in the preceding section shall not be held to include:

"(a) Any person having a regular, separate, fixed and established place of business, other than a transportation business, where goods, wares, and merchandise are kept in stock and are primarily and regularly bought from the public or sold to the public or manufactured or processed by such person in the ordinary course of mercantile, manufacturing, or processing business, and who, merely incidental to the operation of such business, transports over the highways of this State such goods of which such person is the bona fide owner by means of a motor vehicle of which such person is the bona fide owner; nor

"(b) Any person transporting farm implements, livestock, livestock feedstuffs, dairy products, horticultural products, floral products, agricultural products, timber in its natural state, or wool and mohair of which such person is the bona fide owner on a vehicle of which he is the bona fide owner to and from the area of production and to and from the market or place of storage thereof; provided, however, if such person (other than a transportation company) has in his possession under a bona fide consignment contract livestock, wool, mohair, milk and cream, fresh fruits and vegetables, or timber in its natural state under contract, as an incident to a separate, fixed, and established business conducted by him the said possession shall be deemed ownership under this Act."

\* \* \* \* \*

"Sec. 1b. Any person who transports goods, wares, or merchandise under the circumstances set forth in the foregoing Section 1a so as to be excluded by the terms of said Section from the definition of 'motor carrier' or 'contract carrier' shall be deemed to be a private motor vehicle owner; and such use of the highways by such private motor vehicle owners, as herein defined, shall be construed as use of the highways for the general public and not the use of such highways for the carrying

on the business of transporting property for compensation or hire. Added Acts 1941, 47th Leg., p. 463, ch. 290, Sec. 1."

* * * * *

"Sec. 3. No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do, which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act. As amended Acts 1931, 42nd Leg., p. 480, ch. 277, Sec. 3."

The penal provision of the Act, appearing as Paragraph (a) of Art. 1690b V.A.P.C., provides as punishment for violation or failure to comply with the Act, a fine of not less than $25 nor more than $200.

The question presented is: Under the facts stated, was Jack Funderburg a "contract carrier" as defined in Section 1, (g) and (h), or was he a "private motor vehicle owner," excluded from the definition of motor carrier or contract carrier under Section 1a (1), a and b, and Sec. 1b of the Act?

We hold that under the facts stated Funderburg was a "private motor vehicle owner" under the terms of Sec. 1b of Art. 911b V.A.C.S., and as such was not required to comply with the Act by securing a permit before hauling the cattle he sold in his own truck.

His employer not being a motor carrier, appellant was also excluded from the requirements of the Act applying to motor carriers.

As we view it, the question of whether the sale of the cattle was complete before they were hauled is not controlling. If so, the fact remains that the hauling of the cattle entered into and was a part of the transaction by which the ownership thereof passed from the owner of the truck to Mr. Farnsworth. Under the sale agreement the cattle were to be delivered to the Farnsworth ranch by the seller.

492

We point to the following provisions of Sec. 1a of Art. 911b V.A.C.S. which, with Section 1b, were added by Acts 1941, 47th Legislature, p. 463, ch. 290, Sec. 1:

"(1)  Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier,' as defined in the preceding section shall not be held to include: * * * (b)   Any person transporting * * * livestock * * * of which such person is the bona fide owner on a vehicle of which he is the bona fide owner to and from the area of production and to and from the market place or place of storage thereof; * * *."

Our construction of the statute in question is further supported by the expressed intent of the legislature at the time the Act was amended in 1941 and prior thereto.

The motor carrier act was enacted in 1929, and was amended in 1931.

In 1936 the Supreme Court of Texas, in New Way Lumber Company et al v. Smith, et al, 96 S.W. 2d 282, construed the Act (Art. 911b V.A.C.S. as amended in 1931) and held that the carrying of lumber owned by the company on its own trucks, the price of the lumber including a direct charge for the delivery thereof, did not exempt the Lumber Company from the provisions of the Act.

An unusual consequence of this decision was Senate Concurrent Resolution No. 65, Acts 1937, p. 1552, wherein the 45th Legislature announced the "Legislative Construction of the Motor Carrier Act" and resolved "that the fact that a seller of merchandise who transports such merchandise from one place to another in motor trucks owned by the seller, who adds to the sale price of such merchandise at point of delivery a charge to cover a part or all of the cost of transportation, is not engaged in transporting for hire, as that term is defined in the Motor Carrier Act of this State, and is not subject to the provisions of said Act * * * ."

Also the legislature resolved that the act should be construed, pending further legislative enactment with reference thereto, to mean that it shall not be necessary for a private carrier to procure a permit from the Texas Railroad Commission to transport his own goods * * * in his own vehicle over the highways * * * and that it was not the intention of the legislature in enacting the Motor Carrier Act * * * and amendments thereto, to include

regulation of motor vehicles upon the highways of this state, owned by persons * * * and operated in the transportation of goods * * * owned by the owner of said vehicle.

As the state points out, this resolution did not constitute a legal amendment of the penal provisions of the motor carrier act.

The act was amended, however, by Acts 1941, p. 463, by the addition of Sections 1a and 1b above quoted, the emergency clause reciting the holding of the Supreme Court of Texas in New Way Lumber Company et al v. Smith, et al, supra.

We conclude that appellant, as the employee of the owner of the truck and the seller of the cattle being transported, was not a "contract carrier" and the hauling of the cattle was not such an operation as to require that a permit be secured.

For the reasons stated, the judgment is reversed and the prosecution ordered dismissed.