**Dorothy LATHAM et al., Appellants,**

v.

**Royce C. SMITH, Appellee.**

**No. 612.**

Court of Civil Appeals of Texas, Tyler.

Feb. 24, 1972.

Rehearing Denied March 16, 1972.

R. Earl Lord, Houston, Dunnam, Dunnam & Dunnam, W. V. Dunnam, Jr., Waco, for appellants.

Ramsey, Ramsey & Smith, J. L. Smith, James A. Doherty, San Augustine, for appellee.

MOORE, Justice.

This is a damage suit arising out of an automobile—truck collision. William Latham was killed in the accident. Plaintiff, Dorothy Latham, widow of the deceased, acting individually and as next friend of Janice Latham and Gregory Latham, and Carmon Latham, mother of the deceased brought suit for damages under the wrongful death statute. Plaintiff, Truitt L. Little, a passenger in the Latham automobile, brought suit for damages for personal injuries. Plaintiffs named as defendants Jerry Jenkins, the owner and operator of the truck, and Royce C. Smith. Plaintiffs allege that on November 22, 1968, William J. Latham, deceased, and plaintiff, Truitt L. Little, were proceeding in a motor vehicle on a public highway from Hemphill, Texas, towards San Augustine, Texas, when a large motor vehicle, namely a truck, operated by defendant Jerry Jenkins, which was approaching them headed in the opposite direction and on its left-hand side of the roadway, collided with the motor vehicle operated by them, resulting in the death of the said William J. Latham, deceased, and permanent injuries to the said Truitt L. Little. Plaintiffs alleged that the said Jerry Jenkins was an employee of the said Royce C. Smith and was acting in the course and scope of his employment and was guilty of various negligent acts and omissions proximately causing the collision and the injuries and damages sustained by plaintiffs. In the alternative, plaintiffs alleged that if the said Jerry Jenkins was not an employee of the said Royce C. Smith at the time of the collision, liability for the accident was attributable to Smith because of a conspiracy between him and Jenkins to violate the motor transport laws of this State. In connection with the alleged conspiracy plaintiffs allege that prior to the collision Smith owned and operated a business in the City of Hemphill, Texas, that required for its profitable operation the hauling of large quantities of pulpwood upon the public highways of this State from rural areas outside said city to said business establishment. In order to avoid the payment of high charges for said hauling, which motor carriers for hire lawfully operating under a permit in compliance with Article 911b of the Vernon's Ann.Revised Civil Statutes of Texas, necessarily charg-

ed due to the lawfully required expense of liability insurance, fees and required equipment and in order to also avoid the potential personal liability to the public for possible negligence inherent in said hauling, defendant Smith conceived and effectuated a scheme, combination and conspiracy with the said Jenkins whereby Jenkins would cheaply haul said pulpwood for Smith on said highways purportedly as an independent contractor by using a truck licensed and registered in the name of the said Jenkins as a farm truck without the permit required by said Article 911b in avoidance of said expenses required thereunder. Plaintiffs further alleged that the defendant Smith knew at all times that said Jenkins was insolvent and for the purpose of effectuating said conspiracy, he aided, advised and abetted in the registration of the truck as a farm truck under the provisions of Article 6675a–6a of the Revised Civil Statutes of Texas, although he at all times knew that the said truck was actually used and going to be used by the said Jenkins for the transportation of pulpwood, purchased and to be purchased by Smith from the site of purchase to Smith's place of business in violation of Article 911b, supra. Plaintiffs also alleged that at the time of the collision, defendant Jenkins was in the act of carrying out the purpose of the said conspiracy to unlawfully transport pulpwood upon the public highways of the State of Texas.

Trial was before a jury. In response to the special issues, the jury found defendant Jenkins guilty of various acts of negligence proximately causing the collision. The jury also found that Jenkins was not an employee of Smith at the time of the collision but was acting as an independent contractor. In response to Special Issues Nos. 10, 11 and 12, the jury further found that prior to the collision in question, defendant, Royce C. Smith, knew that the 1967 Ford Truck operated by Jenkins was licensed and registered solely as a farm truck; that Smith and Jenkins had an agreement whereby Jenkins would haul the pulpwood purchased by Smith upon the public highways of this state and also found that at the time of the collision Jenkins was acting in the furtherance of the agreement. Defendant, Royce C. Smith, duly filed a motion requesting the court to disregard the jury's finding to Special Issues Nos. 10, 11 and 12 and moved for judgment non obstante veredicto in his behalf. The trial court rendered judgment on the verdict in favor of plaintiffs against Jenkins but granted Smith's motion for judgment non obstante veredicto and entered a take-nothing judgment in his favor from which plaintiffs duly perfected this appeal. Defendant, Jerry Jenkins, did not appeal.

By three points of error plaintiffs urge that the trial court erred in disregarding the jury's findings to Special Issues Nos. 10, 11 and 12 and in rendering judgment notwithstanding the verdict in favor of the defendant, Royce C. Smith. Plaintiffs' theory of liability against Smith is based upon his participation in a conspiracy to violate Article 911b, supra. They argue that the evidence, together with the jury's findings, shows that Smith and Jenkins entered into a conspiracy to evade the motor transport laws of this state in transporting timber without a Railroad Commission Permit, and since Smith was a party to the conspiracy, liability was attributable to him along with his co-conspirator, Jenkins. In reply, Smith argues that the evidence fails to establish a cause of action for conspiracy because Jenkins was engaged in transporting upon his own truck, timber in its natural state, of which he was deemed under the statute to be the owner. Consequently he says that under the circumstances no permit was required by the statute and therefore the alleged conspiracy, if any, could not have been unlawful. We agree with the proposition asserted by defendant Smith and accordingly affirm the judgment of the trial court.

Under Rule 301, Texas Rules of Civil Procedure, the trial court is authorized to render judgments non obstante veredicto in instances where a directed verdict would have been proper.

Section 1(g) of Article 911b, supra, provides:

"The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association and their lessees, receivers or trustees appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated by any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

Section 1(h) of the statute reads as follows:

"The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier."

Section 1a(1) of Article 911b, supra, reads as follows:

"Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier' as defined in the preceding section shall not be held to include:

 *   *   *   *   *   *

"(b) Any person transporting farm implements, livestock, livestock feedstuffs, dairy products, horticultural products, floral products, agricultural products, timber in its natural state, or wool and mohair of which such person is the bona fide owner on a vehicle of which he is the bona fide owner to and from the area of production and to and from the market or place of storage thereof; provided, however, if such person (other than a transportation company) has in his possession under a bona fide consign-ment contract livestock, wool, mohair, milk and cream, fresh fruits and vegetables, or timber in its natural state under contract, as an incident to a separate, fixed, and established business conducted by him the said possession shall be deemed ownership under this Act." Sec. 1b reads as follows:

"Any person who transports goods, wares, or merchandise under the circumstances set forth in the foregoing Section 1a so as to be excluded by the terms of said Section from the definition of 'motor carrier' or 'contract carrier' shall be deemed to be a private motor vehicle owner; and such use of the highways by such private motor vehicle owners, as herein defined, shall be construed as use of the highways for the general public and not the use of such highways for the carrying on the business of transporting property for compensation or hire."

Other sections of the statute provide in substance that no person, firm or corporation shall act as a contract carrier unless a permit has been issued by the Railroad Commission of the State of Texas. Numerous other provisions of the Motor Carrier Act are patently designed for protection of the public, such as the requirement for indemnity insurance, Railroad Commission approval of equipment and the like. (Article 911b, secs. 13, 13a).

As we view the record, Jenkins was not shown to be a contract carrier as defined in the Act but was a private motor vehicle owner as defined by Sec. 1a(1) (b) and Sec. 1b of the Act.

Smith, the record shows, was a pulpwood dealer and maintained a place of business in Bronson, Texas. In this business he received orders from manufacturers of paper products for large amounts of pulpwood. He would buy the wood from anyone who delivered it to his yard. On some occasions he would buy standing timber and arrange with an independent contractor to cut and transport the pulpwood to his wood yard. It is without dispute that pulpwood consti-

tutes timber in its natural state. Defendant Jenkins, the record shows, was engaged in the business of cutting timber, sawing it into the proper lengths for pulpwood and hauling some to the market place. He was the owner of the 1967 Ford truck which he used in his business and which was involved in the collision in question. Several days before the collision Jenkins commenced cutting pulpwood from land owned by a Mr. Horn in San Augustine County, hauling it to Smith's yard. As to the ownership of the pulpwood after it had been severed from the land, the record is not clear. Smith testified that he handled various timber deals but could not remember ever having talked to Horn about buying the timber. He denied he owned the pulpwood prior to the time it was delivered to his yard. Jenkins denied that he owned the pulpwood or had an interest therein. Horn did not testify. It is without dispute that Smith paid Horn for the wood. He testified he paid Horn because Jenkins instructed him to do so. He further testified that he would not have paid Horn if Jenkins had sold the wood elsewhere. The record shows that there was something of a standing agreement between Jenkins and Smith that for the harvesting of standing timber, cutting it in the proper lengths and transporting it to Smith's yard, Jenkins would be paid at the rate of $5.00 per load. Smith admitted that prior to the accident he knew that the truck was licensed as a farm truck and Jenkins did not have a Railroad Commission Permit as a contract carrier for hire. On the morning of November 22, 1968, shortly before the accident, Jenkins left his home in the truck going to Horn's land to continue cutting and hauling the pulpwood to Smith's yard. At the time of the accident the truck was not loaded and Jenkins was not in the act of transporting anything.

By the enactment of Section 1a(1) (b), the legislature obviously intended to except from the operation of the statute the transportation by the bona fide owner of timber in its natural state upon a vehicle which he is the bona fide owner from the area of production to the market place. The legislature, however, went a step further and added a proviso, stating that if such person has in his possession timber in its natural state under contract as an incident to a separate, fixed established business conducted by him, possession "shall be deemed ownership under [the] Act."

The expression "shall be deemed" has been used time out of mind in statutes to import the same as "shall mean." Words & Phrases, Vol. 39, p. 171. It has been held that the expression, "shall be deemed" creates a conclusive presumption as distinguished from presumed prima facie. 26 C.J.S. Declaratory Judgments § 40 pp. 122, 123.

■ By the use of the phrase "possession shall be deemed ownership," we think the legislature intended to create a conclusive presumption of ownership in the person possessing and transporting timber in its natural state from the area of production to the market place under contract where the transportation is incidental to a separate, fixed established business conducted by such person.

■ On the occasions when Jenkins was actually engaged in hauling the pulpwood, it is without dispute that he was transporting timber in its natural state. Since Jenkins and Smith both denied that they owned the pulpwood, it must be concluded that title to the wood remained in Horn. Since Jenkins was in lawful possession, it must be implied that he was cutting and hauling the wood under authority from Horn. In these circumstances it must be implied that Jenkins had some type of agreement with Horn to cut and haul the wood with the understanding that Jenkins would instruct the purchaser (Smith) to pay Horn direct and that Jenkins' compensation was to be left up to him and the purchaser (Smith.) Plaintiffs do not challenge the finding that Jenkins was an independent contractor. Consequently, Jenkins was engaged in transporting timber in its natural state under contract. The evidence shows that the transportation of the wood was incidental

to a separate established business conducted by Jenkins, to-wit, the separate business of harvesting the trees and cutting them into the proper length for pulpwood. All the evidence shows that the transportation of the wood was from the area of production to the market place. The wood was transported in a truck owned by Jenkins. In these circumstances the proviso in Sec. 1a (1) (b) declares Jenkins to be the owner. Consequently we hold that Jenkins was one of the types of carriers excluded from the act and therefore a permit was not required. Whitman v. State, 308 S.W.2d 884 (Tex.Crim.App., 1958). Since no violation of the act was shown, it follows that plaintiffs failed to establish liability on the part of Smith upon the theory of conspiracy.

It may be, as plaintiffs argue, that an operation of this type should not be allowed to escape State regulation. This, however, is a matter for the legislature and not the courts.

Affirmed.